**David Richard ERICKSON, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C6–87–1208.**

Court of Appeals of Minnesota.

Nov. 24, 1987.

Boyd Beccue, Willmar, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant was arrested for driving while under the influence. His license was revoked after he failed the Intoxilyzer test. He petitioned for judicial review, challeng-

ing the stop and test. The trial court sustained the revocation and Erickson appeals. We affirm.

## FACTS

On February 14, 1987, Officer David Wyffels was dispatched to the Fireside Inn (the Inn) after a call reporting that two intoxicated individuals were trying to "crash" a wedding party. Officer Bruce Monson also responded. They arrived at the Inn at approximately the same time, entering the parking lot from opposite ends.

Wyffels and Monson parked close to the entrance of the Inn, partially blocking appellant, who had just begun to leave in his pickup truck. Monson could see a group of people, including the manager and off duty deputies, watching the truck. Monson testified that, while he assumed the pickup contained the persons against whom the complaint was directed, he parked where he did because it was as close as he could get to the entryway. He stated that he would have parked there regardless of where the pickup was. Wyffels testified he did not know the pickup contained the people he was there to investigate. Monson and Wyffels agree that the truck probably could not have left the lot because of the position of the two squad cars. Monson explained that, while he believed the truck could have driven around him, the usual "drive through" lane in the lot was blocked because the lot was so crowded that night.

Appellant Erickson testified that he was asked to leave the Fireside Inn and he got into his vehicle to go home. He started his truck and began to move forward when a squad car pulled up in front of him, perhaps three to four feet away. He then put his truck in reverse, and began backing up, when another squad car arrived behind him. He stopped and shut off his engine. Appellant claims that the officer blocked him from leaving, and that the "blocking" was intentional.

After the officer stopped, the manager indicated to Monson that the occupants of the truck had been causing the problem.

Monson caught Wyffels' attention and motioned towards the pickup. Wyffels then talked to the passenger, who responded with profanities. Wyffels observed indicia of intoxication. He saw that the driver, appellant Erickson, also exhibited signs of intoxication. Wyffels walked around to the driver's side of the vehicle. He noticed appellant had a strong odor of alcohol and slurred speech. Wyffels asked appellant to leave the truck, and noticed further indicia of intoxication.

Wyffels placed appellant under arrest for D.W.I. and transported him to the Willmar Safety Building. Once there, they entered the Intoxilyzer room. Wyffels read the implied consent advisory to appellant at 9:55 p.m. and completed it at 9:58 p.m. Appellant agreed to take a breath test. Wyffels then had to locate a certified Intoxilyzer operator to administer the test. There is no telephone in the Intoxilyzer room and to find an operator, he must take one of three steps: he can call to an officer standing in the hallway; he can use his portable radio; or he can leave the room and walk down the hall, a distance of about 15 feet, and ask the dispatcher to contact an Intoxilyzer operator.

Wyffels did not believe he left the room during the observation period. He stated that, if he had left the room, he would have done so shortly after 9:58 p.m., and it would have taken him just seconds to walk down the hall, notify the dispatcher, and return. The test record indicated the test began at 10:16 p.m. and the first breath sample was given at 10:18 p.m.

Appellant testified that after Wyffels read him the implied consent advisory, Wyffels left the room for several but less than ten minutes. Appellant claims he smoked a cigarette, because he was nervous. He did not finish smoking the cigarette before Wyffels returned. Appellant did not tell Wyffels he had been smoking, but put the cigarette out on his boot and put the butt in his coat pocket.

On rebuttal, Wyffels testified that appellant's testimony did not conform with his recollection. Wyffels said that he could not have left the room for the length of time appellant claimed he did and forgotten that he did so. Wyffels testified that if he left the room at all, it was only for a few seconds.

The trial court made extensive findings of fact. It found in relevant part that Wyffels and Monson parked in front of the Fireside Inn, not to block the truck from leaving, but instead to insure that they were as close as possible to the front door. The court determined that since the truck had already stopped at the time Wyffels approached it, no seizure occurred. The court further found that there was sufficient space between the pickup and Monson's vehicle to allow appellant to move the truck out of the parking spot. As to the observation period, the court found Wyffels testified he kept appellant under continuous observation for 15 to 20 minutes, and that if he did leave, it was only for a few seconds. He determined the observation period was more than 15 minutes, since the test did not begin until 10:16 p.m.

The trial court sustained the revocation, and Erickson appeals.

## ISSUES

1. Did the officers seize appellant's vehicle?

2. Was the trial court clearly erroneous when it credited the officers' testimony over appellant's as to the observation period, and determined that the observation period was sufficient?

## ANALYSIS

### I.

*Stop and seizure*

Appellant first argues that when the officers pulled in front of and behind him, effectively blocking his way and forcing him to stop, a seizure occurred. He argues that at this point the officers did not have specific articulable facts upon which to base the stop, thus the stop was unlawful. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *see also State v. Combs*, 398 N.W.2d 563, 565 (Minn.1987) (particularized objective basis for suspect-

ing criminal activity is needed to stop). The trial court found that the officers parked as they did in order to be as close to the entrance of the Inn as possible, rather than to stop appellant. It also found that appellant could have pulled out of his parking spot if he had chosen to do so.

■ The fourth amendment protects against unreasonable searches and seizures. *Terry,* 392 U.S. at 9, 88 S.Ct. at 1873. However, not all contacts between police and citizens involve seizure; only when the officer in some way restrains a citizen's liberty does a seizure occur. *Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16. A test to determine if a seizure occurred is whether a reasonable person would have concluded under the circumstances that he was seized and not free to go. *Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed. 2d 229 (1983), (citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)); *State v. Beckman,* 354 N.W.2d 432, 436 (Minn.1984); 3 W. LaFave *Search and Seizure,* § 9.2(h)(2d ed. 1987).

■ We agree that the blocking of a car by police officers can constitute a seizure. *United States v. Kerr,* 817 F.2d 1384, 1386–87 (9th Cir.1987) (officer who pulled into and blocked defendant's one-lane driveway as defendant was pulling out seized the defendant); 3 W. LaFave, § 9.2(h) at 416. In *State v. Reese,* 388 N.W.2d 421, 422–23 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 13, 1986), officers saw two vehicles stopped at an intersection, and noticed a woman driver conversing with a man in the passenger seat. When neither vehicle moved, the officers pulled the police car in at an angle that allowed the headlights to illuminate the car. This court held that no seizure occurred because the vehicle had already stopped, and that even if the officers had stopped the vehicle, they articulated specific facts creating a reasonable suspicion of criminal activity to warrant the stop. The dissent argued that positioning the police car to block any forward movement classified the action as a stop. *Id.* at 424 (Parker, J., dissenting).

The Commissioner argued that any blockage of appellant's vehicle was merely a fortuitous occurrence. The Commissioner contends that a seizure does not occur whenever any two squad cars responding to a call are parked in a manner which incidentally "boxes in" another parked car, whether that car is unoccupied or whether it is leaving.

On the other hand, appellant argues that it strains credibility to believe that the police officers had nowhere else to park. He further argues that, based upon Monson's assumption the pickup contained the people attempting to "crash" the wedding party, it is only proper to conclude that the officers intentionally stopped his truck.

Based on all the evidence, the trial court found that the officers parked their vehicles in front of the entryway and by appellant's truck in order to be as close as possible to the entrance, and not to intentionally block and seize appellant. We hold that this finding is not clearly erroneous. On this record, we cannot say that the officers should have parked in a different location just to avoid blocking the truck. The actions of the officers in parking their vehicles, which may have incidentally blocked appellant's vehicle, did not constitute a "seizure" under the fourth amendment.

## II.

### Adequacy of test

■ Appellant also challenges the trial court's determination that the observation period for the Intoxilyzer test was sufficient. Appellant argues that the trial court's finding that Wyffels kept appellant under observation is clearly erroneous, and asserts that his testimony is more credible. Findings of fact by the trial court will not be set aside unless clearly erroneous. *State, Department of Highways v. Beckey,* 291 Minn. 483, 486–87, 192 N.W.2d 441, 444–45 (1971). The trial court did not clearly err when it credited the officer's testimony over the testimony of the driver.

**DECISION**

The order of the trial court sustaining the revocation is affirmed.